KATIE C. YUNGCLAS et al., Appellees, v. GEORGE F. YUNGCLAS et al., Appellants.

No. 40872.

NOVEMBER 17, 1931.

R. G. Remley, for Wisconsin Lumber Co., appellant.

F. J. Lund, for appellees.

Martin & Alexander, for Hilah Atkins, James Coldbeck, P. J. Graney, Independent Motor Truck Co., and L. A. Andrew, Receiver of Hamilton Co. State Bank, appellants.

ALBERT, J.—The fact situation in this case is practically undisputed. Christine Catharine Yungclas died intestate on September 4, 1928, seised of 120 acres of land in Hamilton County, Iowa, of the approximate value of $18,000. She left surviving her five children, and Catharine C. Yungclas, one of the children, was appointed administratrix of her mother's estate. All of such children are parties to this action, either plaintiff or defendant, as is the administratrix. One of the children, George F. Yungclas, is a party defendant, and he, at all times involved herein, was insolvent.

At the time of the death of deceased, six different creditors of George Yungclas's reduced their claims to judgments, totaling the sum of $6,000. At the February 1930 term of the Hamilton County District Court, the administratrix of this estate brought an action against George on a promissory note for $1173.25,

which note was delivered to his mother during her lifetime; also in the same action she sought to recover from George for board, room, cash and other necessities for himself and his children in the amount of $8,000. This action went to judgment against George F. Yungclas on default, and judgment was rendered against him in the sum of $9900 and costs.

The present action was instituted on the 28th day of March, 1930, setting up the facts of the death of Christine intestate, the heirship, the necessary history of the estate, describing the land in controversy, and asking partition thereof; also setting up the $9900 judgment which the administratrix held against George, and asking that it be allowed as a set-off or retainer as against the share of George in this real estate,—which, of course, if allowed, would absorb George's interest in this estate; and the prayer of the petition is that it be so allowed, and that the 120 acres of land be divided among the other four heirs.

The proceedings also make all of the judgment creditors of George parties defendant, but claim that the right of set-off is superior to the right of such judgment creditors. The district court found with the plaintiffs, ordered the partition, and after allowing the set-off, held that George had no interest in the land; that the other four heirs owned the full title thereto; and that the right of set-off was superior to the right of George's judgment creditors.

This gives a sufficient history of the situation for the determination of the questions raised in the appeal.... . . .

I. The first question urged on our attention is that the right of set-off or retainer, when it exists, is limited to the personal estate, and is not available against the real estate inherited. This much-mooted question has received our careful attention, and all of the authorities are reviewed in the case of Woods v. Knotts, 196 Iowa 544, which case has been followed in In re Estate of Mikkelsen, 202 Iowa 842; Schultz v. Locke, 204 Iowa 1127; and Lusby v. Wing, 207 Iowa 1287, where we have committed this court to the doctrine that the right of set-off, when it exists, is available against the real estate as well as the personal property inherited.

II. The judgment creditors each filed answer in the case, the substance of which is that the $9900 judgment is void and ineffective because the indebtedness of George F. Yungclas

to the estate of Catharine Yungclas was without consideration and fictitious, and that the allegations of that petition and the petition itself constituted an attempt to defeat the lien of these judgment creditors by fraud and collusion, and that the administratrix (plaintiff in that case) and George F. Yungclas colluded for the alleged purpose of defeating these defendants, and were not acting in good faith; that the pretended indebtedness involved in that action existed largely by reason of services rendered by one member of a family to another, and there is neither allegation nor proof that said decedent ever expected any compensation therefor; that the items set forth as constituting said pretended indebtedness were neither advancements nor debts, and were voluntary on the part of the decedent, and were furnished, if at all, without mutual expectation or without thought that they would be charged against the share of the defendant George F. Yungclas in said decedent's estate for distribution among the heirs; and that the obtaining of said judgment was and is a fraud upon said court and fraudulent as to the defendant; that the judgment therein entered was for more than the amount which the plaintiff therein alleged to be due from said defendant.

One question discussed in relation to this defense is whether or not the attack thus made on the validity of the $9900 judgment is a direct or collateral attack. Without deciding this question, we will assume, for the purposes of the case, that it is a direct attack on said judgment. The situation then is that this judgment, being regular on its face, is *prima facie* valid, and the burden of proof therefore is upon the party asserting the invalidity of the judgment to sustain such claim.

It will be noted in passing that the parties assaulting this judgment are strangers to it. We have recognized the right of such strangers to attack a judgment where the same has been procured by fraud and collusion, in an equitable proceeding brought for that purpose, to have the judgment set aside. A typical case is Stewart Lumber Co. v. Downs, 142 Iowa 420; note in 5 A. L. R., 655; and some light is thrown on the proposition in McCullough v. Connelly, 137 Iowa 682; Heisinger v. Modern Brotherhood, 192 Iowa 46.

Assuming, therefore, that the proceeding is proper and the judgment creditors are in a position to attack the validity of

this judgment, the question is whether or not they have, by proper evidence, met their burden of proof in that matter. We have searched the record and re-read it and are unable to find where the judgment creditors have met this burden. They admit frankly in argument that the promissory note for $1173.25 was a valid claim against George. As to the balance of the claim, they have not introduced evidence to overcome the presumption raised by the judgment entry made by the court in the proceedings by the administratrix against George. Having failed, therefore, to overcome this claim and meet their burden, it must be held that the $9900 judgment was available as a set-off against the share of George F. Yungclas in his mother's estate.

III. Appellants insist, however, that the plaintiffs must show that there was a valid indebtedness behind this judgment. They rely on Stewart Lumber Co. v. Downs, 142 Iowa, 420. The only question raised in that case was that the judgment creditor assaulted the judgment on the ground that it was for $770.45, whereas the amount due and for which the judgment should have been entered was $320.45, by reason of there having been made a payment thereon of $450, which had not been credited. There is no question of burden of proof in that case, because the petition which alleged those facts was demurred to and the demurrer sustained. By demurring the defendant admitted the truth of the alleged error in the judgment.

The case of Mahoney v. State Insurance Co., 133 Iowa 570, was a case in which the court held that the attack made on the judgment was collateral, and being collateral, it could not be impeached on the ground that it was obtained through fraud or collusion.

The case of Heisinger v. Modern Brotherhood, 192 Iowa 46, arose from a ruling on a motion to dissolve a temporary injunction. The attempt was to bar the defendant from raising rates of insurance in its company. The defendant filed an answer and a motion to dissolve. The answer pleaded two former adjudications in district courts, where other and different members of the organization had instituted proceedings to stop the raising of these rates, and the court held against them, and the judgments entered in those cases were pleaded in the case at bar. The substance of the holding in that case is that the method of attack followed was proper and entitled the parties to a hearing on the

question of fraud as ·alleged. Nothing whatever is said on the question of burden of proof.

The contention of the appellants, therefore, that the administratrix should show that there was a valid indebtedness underlying the judgment is erroneous, in the absence of a clear and satisfactory showing by the parties attacking the judgment that the same was fraudulent; and until they have met such burden, the administratrix was not called upon to make any showing on the question of the validity of the indebtedness underlying the judgment.

It follows necessarily from these conclusions, therefore, that the ruling of the district court was right.—Affirmed.

FAVILLE, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.