WILLIAM BELL et al., Appellees, v. S. R. BELL et al., Defendants, FIRST NATIONAL BANK OF CHICAGO, Intervenor-Appellant.

D. T. EELLS, Receiver, Appellant, v. S. R. BELL et al., Appellees.

No. 41819.

JUNE 20, 1933.

PETITION FOR REHEARING DISMISSED SEPTEMBER 29, 1933.

838

Powers & Gilchrist, for appellant.

M. R. Stansell, O. M. Slaymaker, and R. E. Killmar, for appellees.

EVANS, J.—Samuel Bell died testate in April, 1924, survived by his widow and by two sons and two daughters. His will gave to the widow a life use of all his property, which consisted in the main of a farm of 350 acres. Subject to this provision it gave all the residue of personal property after the death of the widow to the two sons, William and S. R. Bell, and specifically devised the real estate to the four children by separate and specific description of the part devised to each child. The portion devised to S. R. Bell consisted of a tract of 106 acres. During the last years of the life of the testator, S. R. Bell was his tenant upon this 350-acre farm; and his tenancy was continued after the death of his father throughout the life of his mother, which ended in 1929. The claim of indebtedness owing by S. R. Bell to the estate is predicated upon rent notes, which were unpaid at the time of the death of the father. The will was executed in 1920. The indebtedness of S. R. Bell accrued thereafter. In June, 1925, S. R. Bell executed a mortgage for $12,000 to the Simmons & Co. Bank at Osceola, such mortgage being later transferred to the First National Bank of Chicago, which is now the

party in interest in this litigation. The mortgage was given for the full consideration therein expressed.

The proceeding savors of some degree of collusion between the two brothers, which, however, is not necessarily fraudulent. The first proceeding was brought by the two executors against S. R. Bell to establish the claim of the estate against him. That is to say S. R. Bell, as executor, joined with William Bell, executor, in a suit against himself individually. As an individual he filed an answer admitting all the allegations of the petition made by himself as executor. The fact that he is apparently more zealous to prosecute as a plaintiff, than he is to defend himself as a defendant, is a circumstance which stimulates the scrutiny of the court in the consideration of the evidence. The mortgagee denies that there was any indebtedness due the estate from the mortgagor; denies the insolvency of S. R. Bell; and denies broadly the right of the executors to claim any lien upon the land superior to that of the mortgage. The brothers have dealt together for these many years very loosely indeed. The will was duly probated and the estate remains unsettled. Nothing has ever been done therein by the executors. No inventory has ever been filed. Apparently no report has been made. The record of the probate proceeding contains no reference to any claim against the devisee. This state of the record became something of a trap to the mortgagee. It naturally invites the argument of appellant that the claim of the executors had no basis of fact and that it is merely a recent invention concocted to defeat the mortgage. On the other hand the rent notes are in evidence and there is nothing to impeach their genuineness. As to the insolvency of S. R. Bell, both executors testified to it as a matter of opinion on their part. The form of such evidence might have diminished its weight as compared with better evidence, but none was offered. It does not appear that the debtor had any property at the time of his father's death, or since. It does not appear that he has any now. He was a mere renter upon the farm and so continued until after his mother's death. The very fact that he was persistently delinquent in the payment of his rent is itself suggestive of inability to pay. There are features of the record which strike us unfavorably. But we see no escape from affirming the district court in its finding that the indebtedness existed and that the devisee was insolvent. This being so, our previous cases are quite decisive of the result. Schultz v. Locke, 204 Iowa 1127, 216 N. W. 617; Woods v. Knotts, 196 Iowa 544, 194 N. W.

953, 30 A. L. R. 768; Senneff v. Brackey, 165 Iowa 525, 146 N. W. 24, 1 A. L. R. 978; Johnson v. Smith, 210 Iowa 591, 231 N. W. 470; In re Estate of Mikkelsen, 202 Iowa 842, 211 N. W. 254; Yungclas v. Yungclas, 213 Iowa 413, 239 N. W. 22; Lusby v. Wing, 207 Iowa 1287, 224 N. W. 554; Rodgers v. Reinking, 205 Iowa 1311, 217 N. W. 441; Russell v. Smith, 115 Iowa 261, 88 N. W. 361.

The net effect of the decree of the court was to give to the mortgagee-appellant a one-half interest in the claim of the estate against S. R. Bell on the theory that the will gave to the two sons all of the personal property after the death of the mother and that the mortgage executed by S. R. Bell amounted to an equitable assignment of all the interest he had in the estate. We need not consider the propriety of this method and degree of relief in view of the fact that we see no way upon the record whereby any relief may be extended, which would take priority over the claim of the executors.

It appears from the record that the $12,000 mortgage involved herein purported to include 146 acres instead of 106. The additional description covered a 40-acre tract, which S. R. Bell was expecting to acquire from his brother, William. It was a part of the father's farm. The negotiations between the brothers fell through and the 40-acre tract was never in fact acquired. It is the claim of the appellant that the 40-acre tract was acquired from William and that the deed was withheld from record in avoidance of the rights of the mortgagee. The appellant failed to introduce any evidence in support of its contention at this point. We need give no further consideration to this feature of the record.

The decree is accordingly affirmed.

KINDIG, C. J., and ALBERT, DONEGAN, CLAUSSEN, and STEVENS, JJ., concur.